UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GALO P. MACIAS, | ) |
| Plaintiff, | ) )  ) |
|  | ) No. 13 C 4300 |
| v. | ) |
|  | ) Chief Judge Ruben Castillo |
| BAKERSFIELD RESTAURANT, LLC, | ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Galo P. Macias ("Plaintiff") brings this action against Bakersfield Restaurant, LLC ("Defendant"), alleging national origin and racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), racial discrimination in violation of 42 U.S.C. § 1981, and retaliatory discharge in violation of state law. (R. 14, Am. Compl.) Presently before the Court is Defendant's motion to dismiss Counts I and II of Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 16, Def.'s Mot.) For the reasons stated below, the Court denies Defendant's motion.

## RELEVANT FACTS

Plaintiff is a Hispanic adult male of Ecuadorian descent and a resident of Darien, Illinois. (R. 14, Am. Compl. ¶ 4.) Plaintiff worked for Defendant until his discharge in August 2012. (*Id.* ¶ 5.) Plaintiff claims that he was "treated less favorably than" non-Ecuadorian and non-Hispanic individuals in his work environment despite meeting the "legitimate expectations of his employer" and "performing his job well." (*Id.* ¶¶ 8, 9, 16.) Plaintiff alleges that during his employment, he was subjected to several race and national origin-related comments by his supervisor, Frank Mnuk. (*Id.* ¶ 7.) These comments include: (a) "Mexicans are dirty to work

with"; (b) "You Mexicans stink!"; (c) "You fucking Mexicans are stupid"; and (d) "Fucking Mexicans!" (*Id.*)

On or about June 28, 2012, Plaintiff's iPhone went missing, and he reported the matter to Mnuk. (*Id.* ¶¶ 24, 25.) Mnuk replied that he had not seen the cellular phone, but he "bet one of these Mexicans took it." (*Id.* ¶ 25.) Plaintiff later used an iPhone-locator application to determine the location of his phone and drove to the specified address, where he discovered Mnuk's vehicle. (*Id.* ¶ 26.) Plaintiff subsequently contacted Brian Wright, Defendant's Executive Chef and Mnuk's supervisor, to report that he believed Mnuk stole his iPhone. (*Id.* ¶ 27.) Wright advised Plaintiff that he would handle the matter and requested that Plaintiff refrain from contacting the police. (*Id.*)

As Plaintiff stood outside Mnuk's home, Mnuk came outside and searched his own vehicle with a flashlight, but he did not find the iPhone. (*Id.* ¶ 28.) Plaintiff informed Mnuk that the locator application indicated the cellular phone was inside of Mnuk's home. (*Id.*) Mnuk, however, did not offer to let Plaintiff wait while Mnuk searched his home. (*Id.*)

The next day, Mnuk advised Plaintiff that he still had not found the iPhone, and Mnuk gave Plaintiff permission to search his vehicle. (*Id.* ¶ 30.) Plaintiff searched Mnuk's vehicle and found the cellular phone, which had sustained water damage. (*Id.* ¶ 31.) Plaintiff again reported the matter to Wright. (*Id.* ¶ 32.) Wright agreed to meet with Plaintiff on June 30, 2012. (*Id.*) When Plaintiff arrived to meet Wright, Mnuk told Plaintiff that Wright was not scheduled to work, and inquired what Plaintiff wanted or was attempting to do. (*Id.* ¶ 33.) Plaintiff responded that he wanted his iPhone in good condition. (*Id.*) Mnuk initially refused but eventually agreed to give Plaintiff a new cellular phone, which Wright later assured Plaintiff he would receive. (*Id.* ¶¶ 33, 34.) Plaintiff alleges that after this exchange, Mnuk acted aggressive towards him,

making race and national origin-related comments to him about "Mexicans." (*Id.* ¶ 35.)

Plaintiff still had not received a working phone by July 7, 2012, so he reported to the police that his cellular phone was stolen and returned broken. (*Id.* ¶ 36.) The next day, Mnuk sent Plaintiff a text message stating he would bring Plaintiff a new cellular phone. (*Id.* ¶ 37.) During the next week, Mnuk began training a coworker for Plaintiff's job, declaring that he would make sure Plaintiff lost his job. (*Id.* ¶ 38.) On July 12, 2012, Mnuk brought Plaintiff a used cellular phone. (*Id.* ¶ 39.) Plaintiff also was not scheduled to work after this date. (*Id.* ¶ 40.) Plaintiff alleges he was terminated in August 2012 without an explanation and without having any write-ups or other formal discipline. (*Id.* ¶¶ 5, 6, 9.)

Plaintiff contends that Defendant wrongfully discharged him from employment on the basis of his race and national origin, and as retaliation for reporting his cellular phone as stolen to his supervisor and to the police. (*Id.* ¶¶ 8, 16, 21, 41.)

Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on August 13, 2012, which he attaches to his amended complaint. (R. 14-1, Ex. A, EEOC Charge). The particulars of the EEOC Charge are as follows:

> I was hired by the Respondent on April 14, 2012. My most recent position was line cook. I have been treated differently in terms and conditions of employment by [sic] because of my national origin (Ecuadorian) and my race (Hispanic) [by] being left off of the employment schedule for my reporting the theft of my phone by a Caucasian employee and retaliated against because I reported the theft to the Westmont Police Department.
>
> I believe I have been discriminated against based upon my race and national origin in violation of Title VII of the Civil Rights Act of 1964 as amended and retaliated against because of my conduct under a protected activity in violation of Title VII of the Civil Rights Act of 1964 as amended.

(*Id.*) On March 12, 2013, the EEOC issued Plaintiff a right-to-sue notice ("Notice"), informing Plaintiff that he must file a lawsuit within 90 days. (R. 14-2, Ex. B, Notice.)

3

## PROCEDURAL HISTORY

Plaintiff commenced this action on June 10, 2013. (R. 1, Compl.) Plaintiff filed an amended complaint on August 30, 2013. (R. 14, Am. Compl.) In Count I, Plaintiff alleges national origin discrimination in violation of Title VII. (*Id.* ¶ 1.) In Count II, Plaintiff alleges racial discrimination in violations of Title VII and Section 1981. (*Id.* ¶ 14.) In Count III, Plaintiff alleges retaliatory discharge in violation of state law. (*Id.* ¶ 21.)

On October 1, 2013, Defendant filed a motion to dismiss Counts I and II of Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 16, Def.'s Mot.) On October 30, 2013, Plaintiff filed a response to Defendant's motion, (R. 24, Pl.'s Resp.), and Defendant filed a reply to Plaintiff's response on November 13, 2013, (R. 26, Def.'s Reply).

## LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the non-movant's favor. *Id.* Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Plausibility" in this context does not imply that a court "should decide whose version to believe, or which version is

more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), the "plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* In other words, "the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

## ANALYSIS

As an initial matter, the Court must determine whether it may consider the documents Defendant attaches to its motion. Plaintiff argues that this Court should disregard the documents attached to Defendant's motion to dismiss because these documents were not attached to Plaintiff's amended complaint. (R. 25, Pl.'s Mem. at 2.) Defendant argues that this Court may consider the documents in this motion to dismiss, or alternatively, convert its motion to dismiss into a motion for summary judgment in order to consider the documents. (R. 26, Def.'s Reply at 2-3.)

When ruling on a Rule 12(b)(6) motion, a court generally may consider only the plaintiff's complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). Rule 10(c) provides, however, that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). When a party attaches documents to a motion to dismiss, the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56, or exclude the documents attached to the motion to dismiss and continue under Rule 12. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); *see also* Fed. R. Civ. P. 12(d). A court may consider documents attached to a motion to dismiss, however, if they are referred to in the plaintiff's complaint and they are central to the plaintiff's claim. *Levenstein*, 164 F.3d at 347 (quoting *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). This narrow exception is "aimed at cases interpreting, for

5

example, a contract" and "is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Id.* The district court ultimately has discretion in determining whether to convert a motion to dismiss into a motion for summary judgment. *Id*; *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009).

Here, Defendant attaches several documents to its memorandum supporting its motion to dismiss: an affidavit; a Freedom of Information Act (FOIA) request for Plaintiff's EEOC records; the EEOC's response to the FOIA request; Plaintiff's EEOC Charge; a letter from Plaintiff's counsel to the EEOC; and Plaintiff's EEOC intake questionnaire. (R. 17-1, Exs. A, 1-5.) With the exception of Plaintiff's EEOC Charge, Plaintiff does not attach any of these documents to the complaint and he does not refer to any of these documents in the amended complaint. Resolving Plaintiff's claims does not require the interpretation of any of these documents except for the EEOC Charge. Instead, the documents Defendant submits contain information that is either superfluous to the claims at issue or redundant. Therefore, the narrow exception articulated by the Seventh Circuit is inapplicable here, and the Court will not consider the attached documents in this motion to dismiss. As a result, the Court would need to exercise its discretion and convert this motion into a motion for summary judgment, pursuant to Rule 12(d), in order to consider the attached documents. Because the Court finds that consideration of these documents would not change its analysis, however, the Court declines to exercise its discretion to convert the motion to dismiss into a motion for summary judgment. *See Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (affirming district court's refusal to convert a motion to dismiss into a motion for summary judgment based on district court's discretion).

I. **Whether Plaintiff may bring a claim for racial harassment under Section 1981**

Defendant argues that Counts I and II of Plaintiff's amended complaint should be dismissed because Plaintiff intends to bring a claim for racial harassment, which exceeds the scope of Plaintiff's EEOC Charge. (R. 17, Def.'s Mem. at 5.) Plaintiff clarifies that his claims are for racial and national origin discrimination, not racial harassment. (R. 25, Pl.'s Mem. at 3-4.) Plaintiff subsequently argues, however, that the Court could infer a racial harassment claim from its amended complaint, and that he would be permitted to bring such a claim in his amended complaint because Section 1981 has no exhaustion requirement. (*Id.* at 5; *See* R. 24, Pl.'s Resp. ¶ 6.)

Although Section 1981 does not require the filing of an EEOC charge prior to bringing an action in federal court, *Walker v. Abbott Labs.*, 340 F.3d 471, 474 (7th Cir. 2003), the complaint must, at a minimum, adhere to the fair notice requirement of Federal Rule of Civil Procedure 8(a). Rule 8(a)(2) requires that the Plaintiff "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Here, not only are Counts I and II clearly labeled as claims for national origin and racial discrimination, respectively, but Plaintiff's pleadings unequivocally state that he does not seek to bring a claim for racial harassment. (*See* R. 24, Pl.'s Resp. ¶ 4; R. 25, Pl.'s Mem. at 3-4.) The amended complaint does not provide Defendant with fair notice, or indeed any notice, of a claim for racial harassment in violation of Section 1981. Therefore, the Court declines to accept Defendant's invitation to infer a racial harassment claim, as doing so would violate the clear mandate of Rule 8(a). By refusing to infer a racial harassment claim, however, the Court does not make any representations as to the merit of Plaintiff's national origin and racial

7

discrimination claims in Counts I and II of the amended complaint. Plaintiff has properly exhausted his national origin and racial discrimination claims before the EEOC, and is permitted to bring such claims before this Court. Accordingly, the Court will not dismiss Counts I and II of the amended complaint on the basis that they exceed the scope of the EEOC charge.

## II. Whether Plaintiff may use his supervisor's comments as background evidence to support his discrimination claims

In Counts I and II of the amended complaint, Plaintiff alleges national origin and racial discrimination in violation of Title VII and Section 1981. (R. 14, Am. Compl. ¶¶ 1, 14.) When Plaintiff amended his complaint, he added discriminatory comments his supervisor allegedly made to bolster his claims. (*Id.* at ¶ 7.) Defendant argues that the Court should dismiss Counts I and II or, in the alternative, strike the comments from the amended complaint, because the comments were not included in Plaintiff's EEOC Charge. (R. 17, Def.'s Mem. at 5.) Plaintiff counters that the comments are facts and not claims, and therefore, may properly be added to the complaint. (R. 25, Pl.'s Mem. at 2.) To support its argument, Defendant relies on *Rush v. McDonald's Corp.*, in which the Seventh Circuit held that "[a]n aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." 966 F.2d 1104, 1110 (7th Cir. 1992). This limitation provides "the employer some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts." *Id.* (citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985)). Defendant's reliance on *Rush* is misplaced. In *Rush*, the Seventh Circuit focused on Plaintiff's attempts to bring additional *claims* that were not included in his EEOC Charge. Here, however, Plaintiff's amended complaint does not add claims, but rather facts to support his original claims. Nothing in *Rush* denies Plaintiff the opportunity to do so.

Seeking to avoid this result, Defendant argues that Plaintiff may not use the comments in his complaint because background evidence is permitted only when a "current practice" is at issue, and Plaintiff's dismissal is not a current practice. (R. 26, Def.'s Reply at 5.) Discriminatory acts that are not the basis of a charge of discrimination may "constitute relevant background evidence in a proceeding in which the status of a current practice is at issue [.]" *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977), *superseded in part by statute*, Lilly Ledbetter Fair Pay Act, Pub. L. No. 111–2, 123 Stat. 5 (2009). In this context, the term "practice" includes a discrete act or single occurrence, such as termination, failure to promote, denial of transfer or refusal to hire. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111, 114 (2002), *superseded in part by statute,* Lilly Ledbetter Fair Pay Act, Pub. L. No. 111–2, 123 Stat. 5 (2009). The Seventh Circuit has interpreted *Morgan* to mean that where "the plaintiff timely alleged a discrete discriminatory act . . . , acts outside of the statutory time frame may be used to support that claim." *West v. Ortho-McNeil Pharm. Corp.*, 405 F.3d 578, 581 (7th Cir. 2005) (quoting *Davis v. Con–Way Transportation Cent. Express, Inc.*, 368 F.3d 776, 786 n.4 (7th Cir. 2004). Indeed, such acts often "illuminate the nature of the hostility involved in the actionable conduct." *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 705 (7th Cir. 2001).

Here, Plaintiff bases his discrimination claims on a discrete act: his termination. (R. 25, Pl.'s Mem. at 2.) Defendant argues that Plaintiff's termination is not a "current practice," and therefore is not actionable, because it is a single event. Defendant's interpretation of a "current practice," however, is not consistent with that of the Supreme Court. The comments Plaintiff amended his complaint to include serve to illuminate the alleged discriminatory conduct by indicating racial animus. The Court finds that the comments may be included as background

evidence. Accordingly, the Court will not dismiss Counts I and II or strike the comments from the amended complaint.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (R. 16, Def.'s Mot.) is DENIED. The Court requests the parties to reevaluate their settlement positions, in light of this opinion. A status hearing will be held on June 17, 2014 at 9:45 a.m. to set a firm litigation schedule for this lawsuit if it has not been settled.

ENTERED: _____
**Chief Judge Ruben Castillo**
**United States District Court**

**Dated: May 28, 2014**